DISTRICT OF COLUMBIA, Appellant,

v.

**TRUSTEES OF AMHERST COLLEGE, Appellee.**

No. 85–767.

District of Columbia Court of Appeals.

Argued May 27, 1986.

Decided Oct. 3, 1986.

---

Katherine V. Kelley, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel at the time the brief was filed, Charles L. Reischel and James R. Murphy, Deputy Corp. Counsel, and Lutz Alexander Prager and Richard L. Aguglia, Asst. Corp. Counsel, Washington, D.C., were on brief, for appellant.

C. Francis Murphy, with whom Stanley J. Fineman and Charles A. Camalier III, Washington, D.C., were on brief, for appellee.

Before PRYOR, Chief Judge, and NEBEKER and MACK, Associate Judges.

**NEBEKER, Associate Judge:**

This is an appeal from a decision of the Tax Division of Superior Court granting a cross-motion for summary judgment to appellee Trustees of Amherst College. The sole question presented is whether certain buildings at issue and a vacant lot are entitled to tax exempt status for the tax years 1983 and 1984. The trial court concluded that the buildings were exempt as buildings "belonging to and operated by" a university within the meaning of D.C.Code § 47–1002(10) (1981).[1] The court also concluded that the vacant lot was exempt as "[g]rounds belonging to and reasonably required and actually used" for the activities of an exempt organization within the meaning of D.C.Code § 47–1002(18)(A)(i).[2]

The lots at issue in this case are all properties associated with the Folger Shakespeare Library, which was established by the Trustees of Amherst College (Amherst) in 1932. The library was established and is administered by Amherst in accordance with the last will and testament of Henry Clay Folger. That will provided for the establishment of a permanent library in Washington, D.C. to house Folger's extensive Shakespearean collection. The library, which was to be known as the "Folger Shakespeare Memorial," was to promote knowledge and appreciation of the history and writings of William Shakespeare. The will also provided funding for the maintenance, expansion and administration of the library.

The main library building, which houses the library collection, the Folger Theatre, and an exhibition hall, has been previously granted an exemption from real property taxation by the District of Columbia. The

---

1. D.C.Code § 47–1002(10) provides:
   The real property exempt from taxation in the District of Columbia shall be the following and none other: ...
   (10) Buildings belonging to and operated by schools, colleges, or universities which are not organized or operated for private gain, and which embrace the generally recognized relationship of teacher and student[.]

2. D.C.Code § 47–1002(18)(A)(i) provides:

   The real property exempt from taxation in the District of Columbia shall be the following and none other: ...
   (18)(A)(i) Grounds belonging to and reasonably required and actually used for the carrying on of the activities and purposes of any institution or organization entitled to exemption under the provisions of §§ 47–1002, 47–1005 and 47–1007 to 47–1010.

contested properties in this case are located within one block of the main library building. For the sake of clarity, the undisputed facts as to each will be separately set forth.

### Lot 29, Square 787

This lot, situated at 12 Third Street, S.E., contains a townhouse consisting of three floors and a basement. It was acquired by Amherst in 1965 and has been continuously used to provide short-term housing for individuals who visit the library from out of town. The first and third floors are used as housing for library lecturers and seminar participants through the auspices of the Folger Institute. A nominal fee for the accommodations is paid to the Library by the Folger Institute. The second floor is currently occupied by a former employee of the Library who moved in upon commencement of his employment with the Library, and who, upon termination of his employment, has refused to relinquish possession.

### Lot 808, Square 787

This lot, situated at 16 Third Street, S.E., contains a townhouse comprised of five rooms. It was acquired by Amherst in 1967 and has been continuously used to provide housing for short-term visitors to the Library. The rooms are currently used to provide housing for visiting scholars who come to the Library to conduct research. A nominal fee is charged.

### Lot 807, Square 787

Situated at 18 Third Street, S.E., this lot contains a single family house which was acquired by Amherst in 1967. It has been vacant since August 1984, but prior to that date the house was continuously used as the official residence of the Director of the Library. The Director was not charged rent during occupancy.

### Lot 836, Square 787

This lot, situated at 10 Third Street, S.E., contains a townhouse comprised of six rooms. Acquired by Amherst in 1967, the rooms are used to provide short-term housing for visiting scholars who come to the Library to conduct research. The scholars typically stay from one day to two weeks, for which a nominal fee is charged.

### Lot 814, Square 787

Located at 311 East Capitol Street, S.E., this lot contains a thirteen unit apartment building acquired by Amherst in 1971. This building has been continuously used to provide housing for members of the Folger Theatre Group and for guest actors appearing with the troupe. The rent charged is subsidized by the Library.

### Lot 816, Square 787

Situated at 315 East Capital Street, S.E., this is a vacant side yard lot of Lot 815. Lot 815 contains a building used for storage by the Folger Theatre.

The government of the District of Columbia (government) contends with respect to each of the enumerated buildings that they should not be exempt from real property taxation for two reasons. First, the government contends that the buildings do not "belong to" Amherst within the meaning of D.C.Code § 47–1002(10). Second, the government contends that even if the buildings "belong to" Amherst, they are not then automatically exempt. Rather, the use to which the buildings are put must be examined to determine whether they are being used for an exempt purpose. The government, of course, then argues that the buildings have not been used for such purposes.

With regard to the vacant lot, the government contends that it too does not "belong to" Amherst. In addition, it contends that the lot has not been "reasonably required and actually used" by Amherst as required by D.C.Code § 47–1002(18)(A)(i). We will address each of these contentions in turn.

The government argues that neither the buildings nor the vacant lot "belong to" Amherst because the will of Henry Clay

Folger designated Amherst as trustee of a charitable trust, giving the trustees bare legal title and no enforceable equitable interest. The government then urges upon this court a rule recognized in some jurisdictions that with respect to taxation, where the title to certain property is held in trust, the right to a tax exemption is determined by the nature of the equitable interest.

Assuming that Folger's will did indeed create a charitable trust with Amherst as trustee, we reject the conclusion that Amherst's status as trustee defeats the claimed exemption.

Under the terms of the will, Amherst is charged with the responsibility of establishing and maintaining the Folger Shakespeare Memorial Library and all additions thereto. Amherst is given plenary authority to adopt any "reasonable regulations" as are deemed necessary for the operation of the Library and its environs. In addition, funds were set aside for the "maintenance, upkeep and enlargement" of the Library and for "necessary administration expenses." Additional funds were made available to Amherst for additions to the Library building and its equipment, as well as the collection itself.

■ The investing in Amherst of such broad powers and duties of management and administration, in the absence of any interest, duties or powers residing in any other person or entity leads to no other conclusion but that the properties, as a matter of law, "belong to" Amherst within the meaning of § 47–1002(10). The fact that Amherst, as trustee, holds only bare legal title to the property does not permit a contrary legal conclusion. *See Calvary Baptist Church Extension Association v. District of Columbia,* 81 U.S.App.D.C. 330, 331, 158 F.2d 327, 328 (1946). Thus, we conclude that the subject properties belong to Amherst within the meaning of § 47–1002(10), and that it was entitled to judgment as a matter of law on this issue.

The government next argues with respect to the buildings, that even if they belong to Amherst, exemption is not then automatic. Rather, for buildings to be exempt from taxation under § 47–1002(10), they must be used in a manner which "embrace[s] the generally recognized relationship of teacher and student." *Id.*

■ Our starting point, as always, is with the statute itself. D.C.Code § 47–1002(10) exempts:

> Buildings belonging to and operated by schools, colleges, or universities which are not organized or operated for private gain, and which embrace the generally recognized relationship of teacher and student[.]

The statute contains no requirement that the buildings be used for a particular purpose or activity. This is in stark contrast to other sections of the same statute which do contain express words of use limitation. *See, e.g.,* § 47–1002(3) (property belonging to foreign governments and used for legation purposes); § 47–1002(4) (property belonging to the Commonwealth of the Philippines and used for government purposes); § 47–1002(8) (buildings belonging to and operated by institutions which are not organized or operated for private gain, which are used for purposes of public charity principally in the District of Columbia); *see also* §§ 47–1002(11); (12); (14); (16); (17); (18); and (19).

In spite of the rather clear use of the words in the statute, the government argues that this court in *District of Columbia v. Catholic University of America,* 397 A.2d 915 (D.C.1979), applied a gloss to the statute which requires that use to gain exempt status under § 47–1002(10) embrace the generally recognized relationship between teacher and student. A more careful reading of that decision yields a different rule.

The sole question presented and decided was whether two buildings owned by The Catholic University of America were entitled to tax exempt status for the tax years

1975 and 1976.[3] The first building, "Campus School," was for a time leased to a nonprofit educational institution which abandoned the premises in 1974. From June 1974 until the date of trial on October 29, 1975, Catholic University used one-sixth of the building as a storage facility for school and office supplies. The remaining five-sixths of the building was vacant and unused. *Id.* at 917.

The second building, "Brady Hall," was a two-story residential building with a full basement. For about five years after 1970, and before the date of trial, Catholic University leased approximately eighty percent of the floor space to Gallaudet College for the operation of the Model Secondary School for the Deaf. The Model School was not operated for private gain. Approximately ten percent of Brady Hall was rented to the American Language Academy from September 1973, until September 1975. The Language Academy, unlike Gallaudet, was a profit-making institution. It paid Catholic University rent in the amount of $13,600 for each school year until September 1975 and $3,000 a year thereafter. Catholic University realized a profit of $700 a year in September 1975 and $300 a year thereafter. The remaining ten percent of the building was used by Catholic University for storage.

After September 1975, the Language Academy moved its classes from Brady Hall and maintained only two offices in that facility. During this period, Catholic University used approximately nineteen percent of the building for storage. Gallaudet continued to lease the remaining eighty percent. *Id.*

The trial court, after prorating the exemption for those portions of Brady Hall used for private gain, granted the exemptions. This court, after holding to be invalid a portion of a regulation that required concurrence of ownership and use, affirmed. Campus Hall was held to be enti-

tled to full tax exempt status for the fiscal years 1975 and 1976. Brady Hall was held to be exempt for the same periods at the rate of ninety percent and ninety-nine percent respectively. The prorated exemptions reflected the ten percent and one percent use of Brady Hall by the Language Academy, from which Catholic University derived a profit. *Id.* at 922.

Actual use impacted upon the exempt status of the two buildings at issue in *Catholic University* only to the extent that one of them was used to achieve a profit. Where The Catholic University of America derived a profit from the use of Brady Hall, it became, as to that building, a university "operat[ing]" "for private gain." D.C.Code § 47–1002(10). Thus, to that extent, the exemption was denied. The court did not examine the remaining uses to which the buildings were put (storage and lease to a nonprofit organization) to ascertain whether these uses "embraced the generally recognized relationship of teacher and student." *Id.* Rather, total exempt status was granted less those portions used to earn a profit. *District of Columbia v. Catholic University of America, supra,* 397 A.2d at 922.

■ That holding is consistent with our ruling in this case and the statute. Amherst is a college which embraces "the generally recognized relationship of teacher and student." The property in question belongs to it, and it is not used for gain. Any rents collected from visiting scholars and students are nominal. Thus, the buildings at issue here, like the Campus School building in *Catholic University,* are entitled to full exempt status for the tax years 1983 and 1984.

■ The remaining issue involves the vacant lot, located at 315 East Capitol Street, S.E. This lot is described by Amherst as the "vacant side yard" of Lot 815. Lot 815, situated at 313 East Capitol Street,

---

**3.** The statute interpreted by the court in *Catholic University* was D.C.Code § 47–801a(j) (1973), the identical predecessor of § 47–1002(10).

S.E., contains a building used for storage by the Folger Theatre. The District has exempted Lot 815 from real property taxation.

The trial court concluded that the "vacant side yard" was exempt pursuant to D.C.Code § 47–1002(18)(A)(i) as "grounds belonging to and reasonably required and actually used for the carrying on of the activities and purposes of" an exempt organization. This was error.

For grounds to be exempt under § 1002(18)(A)(i), they must be reasonably required and actually used for carrying on the activities and purposes of an organization otherwise entitled to an exemption. There is no evidence on this record to support the conclusion that the "vacant side yard" has been put to any use whatsoever.

The trial court noted that the vacant lot was acquired for possible future expansion. Although such acquisitions may be "reasonably required," it is not until such expansion has at least begun that such grounds can fairly be found to be "actually used."[4] Accordingly, Lot 816, Square 787 is not entitled to tax exempt status for the period in question.

The judgment of the Superior Court is affirmed in part and reversed in part. The case is remanded to enter judgment for the District of Columbia as to Lot 816.

*So ordered.*

---

4. D.C.Code § 47–1002(18)(A)(ii) exempts "additional grounds" that are "not held for profit or sale but only for the enlargement and expansion" of an organization otherwise entitled to exemption. However, such grounds must have belonged to and formed a part of the existing property of the organization as of July 1, 1942. *Id.* The vacant lot at issue here was acquired in 1970.